UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

AIM GROUP, LLC, *et al.*,                                                          Plaintiffs

v.                                                                Civil Action No. 3:25-cv-690-RGJ

BTL INDUSTRIES, INC., *et al.*,                                                    Defendants
.

* * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, AIM Group, LLC ("AIM") and Amy Loise Stone ("Stone," and, collectively

with AIM, "Plaintiffs"), bring fifteen claims against Defendants, BTL Industries, Inc. ("BTL"),

MMP Capital, Inc. ("MMP), Dext Capital, LLC ("Dext") and QL Titling Trust, Ltd., ("QL

Titling"), relating to Plaintiffs' purchase of equipment from BTL. [*See* DE 1]. Dext and QL Titling

each move separately to transfer venue pursuant to 28 U.S.C. §1404(a). [DE 27; DE 33]. Plaintiffs,

MMP, and Dext responded to QL Titling's motion. [DE 44; DE 48; DE 49]. QL Titling did not

reply. Plaintiffs also responded to Dext's motion [DE 51] and Dext replied [DE 57].

Also before the Court are QT Titling's motion to dismiss and/or for more definite statement

[DE 12], Dext's motion to dismiss [DE 26], MMP's motion to dismiss [DE 42], and BTL's motion

to dismiss [DE 45]. Plaintiffs responded [DE 46; DE 53; DE 63; DE 64] and Defendants replied

[DE 58; DE 62; DE 67; DE 70].

These matters are ripe. For the following reasons, Dext's motion to transfer [DE 27] and

QT Titling's motions to transfer [DE 33] will be **GRANTED in part and DENIED in part**. The

remaining motions filed by QT Titling [DE 12], Dext [DE 26], MMP [DE 42], and BTL [DE 45]

will be **DENIED without prejudice, as moot,** due to the transfer.

1

## I.    BACKGROUND

This case arises from two transactions between Plaintiffs and BTL, taking place in 2022. [DE 1 ¶ 21]. Plaintiff AIM (d/b/a "Reve Body Sculpting") is a weight loss center owned and operated by Plaintiff Stone. [*Id.* ¶ 17]. BTL is a manufacturer of class II medical devices that sells the Emsculpt NEO® ("Emsculpt") and Cellutone devices, for use in "body-contouring and/or skin-tightening procedures." [*Id.*]. Plaintiffs purchased one Emsculpt device and one Cellutone device from BTL in 2022. [*Id.* ¶ 24. *See* DE 1-2 (BTL Equipment Purchase Agreement, hereinafter "BTL EPA")]. The BTL EPA contains a forum selection clause stating that "the Customer agrees to submit all disputes arising out of, or relating to, this Agreement to a court in Boston, Massachusetts." [DE 1-2 at 176].

AIM financed the purchase of the Emsculpt device by entering into an Equipment Finance Agreement with Defendant MMP ("MMP EFA"). [DE 1-3]. Stone executed the MMP EFA as "Guarantor." [*Id.* at 179]. MMP then assigned the MMP EFA to Defendant Dext. [*Id.* at 185]. The MMP EFA contains a forum selection clause selecting the state or federal courts of Nassau County, New York as the "exclusive jurisdiction over any action or proceeding . . . arising under this EFA." [*Id.* at 178]. Additionally, the debtor must "acknowledge the jurisdiction may change at the sole discretion of [MMP's] successors and/or assigns" and "waive any objection based upon improper venue and/or forum non-conveniens." [*Id.*].

Likewise, AIM financed the purchase of the Cellutone device by entering into an Equipment Finance Agreement with Defendant QL Titling ("QL Titling EFA"). [DE 1-4]. Stone executed the QL titling EFA as "Guarantor." [*Id.* at 195]. The QL Titling EFA contains a forum selection clause providing that "any action or proceeding regarding this Agreement, the Equipment

or any cause of action whatsoever arising from or related hereto will be maintained in the state or federal courts in Marion County, Indiana . . . ." [*Id.* at 194].

Plaintiffs initiated this action on October 23, 2025, alleging that BTL fraudulently induced Plaintiffs to purchase the Emsculpt and Cellutone devices by misrepresenting "the profitability and existence of a market to sell services with BTL's products at BTL's minimum advertised prices." [DE 1 at 145]. Plaintiffs also allege that BTL, MMP, and QL Titling conspire to "induce business owners to purchase BTL equipment and enter into Equipment Finances Agreement[s]" and that they did so here, including by falsely claiming that Plaintiffs "could return the equipment if servicing BTL products does not work out with no penalty, that a default would not appear on personal credit, and that Ms. Stone was not pledging any future assets." [*Id.* ¶¶ 20–23].

Dext and QL Titling now move to enforce the venue selection clauses in their respective Equipment Financing Agreements. [DE 27; DE 33]. Dext, as the assignee of the MMP EFA, requests that the Court transfer the case to the jurisdiction of its election, the U.S. District Court for the District of Oregon or, in the alternative, to the U.S. District Court for Eastern District of New York [DE 27 at 239], while QL Titling requests that the case be transferred to the U.S. District Court for the Southern District of Indiana [DE 33-1 at 258].

MMP opposes QL Titling's request to transfer the claims against MMP to the Southern District of Indiana but does not oppose transfer of the claims against QL Titling. [DE 44]. Additionally, both MMP and BTL move to dismiss the case on the grounds that venue is improper. [*See* DE 42; DE 45]. MMP argues that "[a]ll the claims against MMP Capital should be dismissed for improper venue when the MMP EFA contains a forum selection clause selecting the state or federal courts of Nassau County, New York as the "exclusive jurisdiction over any action or proceeding . . . arising under this EFA." [DE 42-1 at 286]. BTL asserts that dismissal is required

3

because all of Plaintiff's claims "arise out of" the BTL EPA which provides that "[t]he Customer agrees to submit all disputes arising out of, or relating to, this Agreement to a court in Boston, Massachusetts." [DE 45 at 319].

## II.    STANDARD

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witness, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The moving party has the burden of showing that transfer to another forum is proper.  *See Means v. U.S. Conference of Catholic Bishops*, 836 F.3d 643, 652 n.7 (6th Cir. 2016); *see also Boiler Specialists, LLC v. Corrosion Monitoring Servs., Inc.*, No. 1:12-CV-47, 2012 WL 3060385, at *2 (W.D. Ky. July 26, 2012) (collecting cases).  When deciding whether to transfer a case, the court first considers whether the action could have originally been filed in the transferee district.  *Payment All. Int'l, Inc. v. Deaver*, No. 3:17-CV-693-TBR, 2018 WL 661491, at *5 (W.D. Ky. Feb. 1, 2018) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). If so, the court then considers "whether on balance, a transfer would serve 'the convenience of the parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine. Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (citing 28 U.S.C. § 1404(a)).[1]

However, when evaluating a § 1404(a) request for transfer premised on a valid, mandatory and enforceable forum selection clause, the § 1404(a) analysis changes. *Atl. Marine*, 571 U.S. at

---

[1] Courts within the Sixth Circuit have identified nine factors that the Court should consider in making this determination.  These factors include 1) the convenience of witnesses; 2) the location of relevant documents and relative ease of access to sources of proof; 3) the convenience of the parties; 4) the locus of the operative facts; 5) the availability of process to compel the attendance of unwilling witnesses; 6) the relative means of the parties; 7) the forum's familiarity with the governing law; 8) the weight granted the plaintiff's choice of forum; and 9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Pharmerica Corp. v. Crestwood Care Ctr., L.P.*, No. 3:12-CV-00511-CRS, 2013 WL 5425247, at *1 (W.D. Ky. Sept. 26, 2013).

63 ("The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis . . . ."). In this situation, the plaintiff's choice of forum is given no weight and the plaintiff "must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* Additionally, "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Id.* Rather, the court is to evaluate public interest factors only. *Id.* When the parties have agreed to a valid forum selection clause, the district court should ordinarily transfer the case to the forum specified in the clause because "[i]n all but the most unusual cases, [ ] the interest of justice is served by holding parties to their bargain." *Id.* at 66.

Courts in the Sixth Circuit generally enforce forum selection clause unless there is a strong showing that the clause should be set aside. *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 567 (6th Cir. 2019). Courts look at the following factors when evaluating the enforceability of a forum selection clause: (1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009).

A valid forum selection clause in a contract provides sufficient grounds to dismiss a complaint under Rule 12(b)(6). *Langley v. Prudential Mortg. Cap. Co.*, 546 F.3d 365, 369 (6th Cir. 2008) (concurring opinion of J. Moore) ("When a party seeks to enforce a forum-selection clause through a properly brought motion to dismiss, the district court may enforce the forum-selection clause through dismissal.").

### III.    DISCUSSION

#### A.  Enforceability of the Forum Selection Clause

At issue in this case are three agreements with three separate forum selection clauses. Plaintiffs acknowledge the forum selection clause in the BTL EPA but allege in the Complaint that

> the forum selection clause in the BTL purchase agreements is unconscionable for the following reasons: (1) the BTL agreements were procured by fraud and the forum selection clause itself was chosen by BTL to deceive the Plaintiffs as BTL knew it would prevent Plaintiffs from being able to seek certain remedies since they solicited Plaintiffs in Kentucky and not in Massachusetts; (2) the enforcement of the forum selection clause would be so gravely difficult and inconvenient that Plaintiffs would be deprived of their day in Court as all the conduct that occurred between BTL and Plaintiffs occurred in Kentucky, and the Plaintiffs are located in Kentucky; (3) the chosen law would deprive the Plaintiffs of a remedy because the Massachusetts Unfair and Deceptive Trade Practices Act requires that the conduct of the parties to have occurred substantially in Massachusetts; and (4) the forum selection clause contravenes Kentucky's strong public policy of protecting consumers from fraud in commercial relationships.

[DE 1 at 142]. Plaintiffs also argue, "[i]t would be unreasonable and unjust" to enforce the forum selection clauses in the QL Titling EFA and MMP EFA because (1) it would require Plaintiffs to litigate their claims in a separate lawsuit from BTL even though the claims arise out of "the same conduct, transaction, or occurrence"; (2) QL Titling and MMP acted as BTL's agents; and (3) enforcement of the forum selection clauses would be a waste of judicial and party resources and risk inconsistent judgments. [*Id.* at 143]. Plaintiffs repeat these arguments in opposition to Defendants' motions in relation to the forum selection clauses. [*See generally* DE  44; DE 51; DE 63; DE 64].

Two federal courts have recently enforced forum selection clauses in cases involving substantially similar claims against BTL and MMP, despite virtually identical arguments from the plaintiffs opposing transfer. *See Advanced Med. Grp. of Cent. Fla. LLC v. BTL Indus., Inc.*, No.

6:25-CV-1132-ACC-LHP, 2025 WL 3776917, at *5 (M.D. Fla. Dec. 22, 2025) (dismissing claims against MMP Capital and transferring those against BTL in accordance with forum selection clauses); *Ellman Aesthetics, LLC*, Case No. 25-80949-cv-MIDDLEBROOKS (Doc. 84) at 5 ("Given that both cases must be transferred to different districts (BTL to Massachusetts and MMP to New York), the best course of action is to dismiss, not transfer, the cases against these Defendants for improper venue.")

Yet this case arises under slightly different circumstances. Here, there are three separate venue selection clauses and four potential forums. Thus, the Court must consider the possibility that this action could be broken up into *four* separate actions: one against BTL in Massachusetts; one against MMP in New York; one against QT Titling in Indiana; and one against Dext in Oregon.

As recognized in *Fed. Mach. & Equip. Co. v. Tousey*, in cases involving multiple agreements with different forum-selection clauses, courts may decline enforcement of all the forum-selection clauses where enforcement "would lead to parallel proceedings involving the same issues in at least two different venues that could result in conflicting judgments." No. 1:21-CV-01422, 2022 WL 615032, at *3 (N.D. Ohio Mar. 2, 2022) (quoting *Woods v. Christensen Shipyards, Ltd.*, No. 04–61432–CIV, 2005 WL 5654643, at *11 (S.D. Fla. Sept. 23, 2005)). Courts have found that "when enforcing 'the forum selection clauses of all the agreements' would force the parties to litigate 'in multiple forums, the exact same claims,' the Court would enforce the forum selection clause in only one agreement." *Boling v. Prospect Funding Holdings, LLC*, No. 1:14-cv-00081-GNS-HBB, 2015 WL 5680418, at *5 (W.D. Ky. Sept. 25, 2015). *See also Long John Silver's, Inc. v. Pressdough of Bismarck, LLC*, No. CV 08-129-KSF, 2008 WL 11346402, at *5 (E.D. Ky. June 16, 2008) (declining to enforce competing forum selection clauses and stating: "Because of the conflicting nature of the forum selection clauses contained in the parties' various

agreements, this is indeed a case where it would be unjust to enforce all of the forum selection clauses. The facts surrounding both restaurants and the parties' agreements are so intertwined that dividing the case up among the different forums could lead to unjust and conflicting results, confusion, expense, and a waste of resources."). If the Court finds that this is one such case, "the question then becomes which forum selection clause controls." *Tousey,* 2022 WL 615032, at *3.

Nevertheless, apart from Dext's motion, discussed below, Plaintiffs have not shown that this case presents truly "exceptional" circumstances which would justify ignoring otherwise valid forum selection clauses. Here, unlike in *Tousey¸* severance of this action would not "lead to parallel proceedings involving the same issues in at least two different venues that could result in conflicting judgments." *Id.* Rather, Plaintiffs would pursue their claims arising out of the purchase agreement with BTL in one action, while the actions arising out of the financing agreements between Plaintiffs, MMP, and QT Titling, would take place separately in their respective forums. Only "Count XII" of Plaintiffs' Complaint, the civil conspiracy claim, is brought against multiple defendants (BTL, MMP, QT Titling). [DE 1 at 165]. Although there may be some overlap in proof on Plaintiffs' conspiracy claim across multiple litigations, the Court agrees with the district courts in *Ellman* and *Advanced Medical Group* that "[t]he existence of overlapping conspiracy allegations does not render the forum-selection clauses unenforceable." *Ellman Aesthetics, LLC*, at 5; *accord Advanced Med. Grp. of Cent. Fla. LLC*, 2025 WL 3776917, at *4. *See also St. Francis Holdings, LLC v. Cynosure, Inc.,* No. 8:20-CV-1101-T-02AAS, 2020 WL 9601509, at *5 (M.D. Fla. Sept. 23, 2020) (severing and transferring claims where the claims against seller arose out of equipment sales agreement and the claims against creditor—also MMP Capital—arose out of a financing agreement).

On the other hand, the Court finds that enforcing Dext's choice of the United States District Court for the District of Oregon as the "exclusive and proper forum to resolve the dispute," pursuant to the "floating" venue provision in the MMP EFA, [DE 57], would result in the exact circumstances contemplated by *Boling*. Dext admits that Plaintiffs' claims against it are based on the underlying "alleged fraudulent procurement of the [MMP EFA]." [DE 27-1 at 238]. Resolution of the declaratory action against Dext in a separate forum from MMP would effectively "force the [plaintiffs] to litigate 'in multiple forums, the exact same claims,'" *Boling*, 2015 WL 5680418, at *5. However, Dext's motion states that "in the alternative," the Court should "transfer the case to the United States District Court for the Eastern District of New York," [DE 57 at 383], the federal district court within Nassau County, New York, as specified in the MMP EFA. Requesting the same forum as MMP eliminates the risk of duplicative litigation and inconsistent judgments between Plaintiffs' claims against MMP and Dext. Under the circumstances presented, the Court will decline to enforce the "floating" forum selection clause but finds the MMP EFA forum-selection clause is enforceable to the extent it selects the state and federal courts of Nassau County, New York.

Plaintiffs' remaining arguments against enforceability are equally unavailing. As to fraud, Plaintiffs' conclusory allegations that the various forum selection are invalid because they were procured by fraud are not enough to overcome the presumption of validity courts in this Circuit afford to such agreements between commercial entities. Defendants correctly observe that "a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection clause." [DE 45-1 at 321 (quoting *Wilson v. 5 Choices, LLC*, 776 F. App'x 320, 327 (6th Cir. 2019)]. Instead, "there must be a well-founded claim of fraud in the inducement

of the clause itself, standing apart from the whole agreement, to render an arbitration clause unenforceable." *Moses v. Bus Card Express*, 929 F.2d 1131, 1138 (6th Cir. 1991).

Here, Plaintiffs do not actually allege that they were fraudulently induced to agree to the forum selected by BTL. Instead, Plaintiffs allege that BTL "deceive[d] the Plaintiffs as BTL knew" the forum-selection clause "would prevent Plaintiffs from being able to seek certain remedies since they solicited Plaintiffs in Kentucky and not in Massachusetts." [DE 1 at 142]. But Plaintiffs do not explain how they were "deceived" in this regard. Nor could they, because the BTL EPA also contained a choice of law provision stating that "[t]his Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts"—meaning, at the very least, Plaintiffs were on notice that they may have waived remedies under Kentucky law.

Nor will the Court decline to enforce the forum-selection clauses based on "Kentucky's strong public policy of protecting consumers from fraud in commercial relationships." [DE 1 ¶ 5]. Indeed, Plaintiffs abandon this argument in response to QT Titling and Dext's motions to transfer and cite no authority supporting this position in response to MMP and BTL's motions to dismiss. Once again, "Plaintiff's argument disregards that the [agreements] also contain a valid choice-of-law provision for Massachusetts (BTL) and New York (MMP Capital)." *Advanced Med. Grp. of Cent. Fla. LLC*, 2025 WL 3776917, at *5. Even assuming *arguendo* that Kentucky does have such a policy, Plaintiffs have not explained how keeping the case in the Western District of Kentucky will further that policy.[2]

In sum, Plaintiffs have failed to make the requisite showing any of the three forum selection clauses were procured due to fraud, that the designated forums would ineffectively or unfairly handle the suit, or that Plaintiffs would be "so seriously inconvenien[ced]" by the designated forum

---

[2] The Court takes no position on the applicable choice-of-law issue at this time.

that it would be unjust. *Boling v. Prospect Funding Holdings*, *LLC*, 771 F. App'x. 562, 568 (6th Cir. 2019).

### B. Appropriate Remedy

Having determined that the forum-selection clause is valid and enforceable, the Court must next determine "how to actually enforce the clause." *Kelly v. Liberty Life Assur. Co.*, No. 17-139-DLB, 2018 WL 558643, at *3 (E.D. Ky. Jan. 25, 2018).[3] As discussed above, QL Titling and Dext seek a transfer pursuant to 28 U.S.C. § 1404(a), while MMP and BTL seek dismissal.

In *Advanced Med. Grp. of Cent. Fla. LLC*, the district court enforced the forum selection clauses under both methods—by severing the claims against BTL and transferring them to the United States District Court for the District of Massachusetts, and by granting MMP's motion to dismiss "based on improper forum due to the forum selection clause so that Plaintiffs can re-file their claims in the proper forum." 2025 WL 3776917, at *5 (M.D. Fla. Dec. 22, 2025). Yet, in that case, the court specifically noted the "[p]laintiffs have not requested transfer rather than dismissal." *Id.* In contrast, Plaintiffs here have requested that, if the Court finds the forum-selection clauses must be enforced, "the Court transfer Plaintiffs' claims" to the appropriate forum "as dismissal would prejudice Plaintiffs financially, as well as due to delay and restarting of the running of the statute of limitations." *Id.*

When enforcing a forum-selection clause, "this Court is permitted to dismiss the matter under Rule 12(b)(6), but not required to do so. Pursuant to 28 U.S.C. § 1404(a), it may also transfer the matter to the appropriate federal forum." *Kelly v. Liberty Life Assurance Co. of Bos.*, No. CV 17-139-DLB, 2018 WL 558643, at *4 (E.D. Ky. Jan. 25, 2018) (transferring the action to the Western District of Pennsylvania pursuant to § 1404(a) when the forum-selection clause required

---

[3] There is no dispute that the forum selection clauses in this case are mandatory.

disputes to "be litigated in Allegheny County, Pennsylvania"). In *Kelly*, the court observed it would be "unfair . . . to wholly dismiss the matter and force [the plaintiff] to expend additional costs by refiling in the Western District of Pennsylvania." *Id.*

So too here. In the interest of justice, the Court finds that transfer, rather than dismissal, is the appropriate remedy to enforce the forum selection clauses. BTL argues that the Court should dismiss the claims against it because "Plaintiffs are in the best position to determine where to refile their claims following dismissal." [DE 70 at 454]. But Plaintiffs have already made that determination by requesting that "the Court transfer Plaintiffs' claims against BTL to Massachusetts," [DE 64 at 431], and the Court sees no reason to impose further costs or delay.

Likewise, Plaintiffs request that "the Court transfer Plaintiffs' claims against MMP to New York." [DE 63 at 426]. MMP argues that "[t]here is no reason to transfer this case to another federal court" because Plaintiffs sued the incorrect MMP entity. [DE 42 at 292, 279 ("[T]he actual entity that provided the equipment financing for the [Emsculpt device] was 'MMP Capital, LLC' not MMP Capital, Inc.")]. MMP further suggests that "the diversity jurisdiction analysis will be different depending upon who are the members of MMP Capital, LLC." [*Id.* at 279]. Notwithstanding the alleged deficiencies in Plaintiffs' pleadings, the Court sees no reason why the receiving court cannot address these issues after the case is transferred. Further, transferring will allow all the claims arising from the MMP EFA (those against MMP and Dext) to remain together until Plaintiffs have a chance to add the correct party under FRCP 21 and/or the receiving court dismisses the claims.

Accordingly, the Court will sever and transfer the claims according to the respective forum-selection clauses. The remaining motions will be denied without prejudice, as moot, due to the transfer. *Accord Advanced Med. Grp. of Cent. Fla. LLC*, 2025 WL 3776917, at *1 (same).

12

## IV.    CONCLUSION

For the reasons above, and being otherwise sufficiently advised, **THE COURT ORDERS AS FOLLOWS**:

(1)    Dext's Motion to Transfer Venue [DE 27] is **GRANTED in part and DENIED in part**.

(2)    Dext's Motion to Dismiss Complaint [DE 26] is **DENIED without prejudice as moot**.

(3)    QL Titling's Motion to Transfer Venue [DE 33] is **GRANTED in part and DENIED in part**.

(4)    QL Titling's Motion to Dismiss Complaint or, Alternatively, Motion for a More Definite Statement [DE 12] is **DENIED without prejudice as moot**.

(5)    MMP's Motion to Dismiss [DE 42] and BTL's Motion to Dismiss [DE 45] are **DENIED in part** as to the forum selection clauses. The remainder of the Motions are **DENIED without prejudice as moot**.

(6)    The claims against MMP and Dext are severed.

(7)    The claims against QL Titling are severed.

(8)    The Clerk of Court is directed to **TRANSFER** the complaint (Counts VIII, IX, X, XII, XIV, XV)[4] against Dext and MMP to the United States District Court for the Eastern District of New York (Nassau County, New York).

(9)    The Clerk of Court is directed to **TRANSFER** the complaint (Counts I, XII, XIV) against Ql Titling to the United States District Court for the Southern District of Indiana (Marion County, Indiana).

---

[4] The numbering in Plaintiffs' Complaint erroneously skips Counts III, IV, XI, and repeats Count XIV against MMP and QI Titling. [DE 1].

13

(10)     The Clerk of Court is directed to **TRANSFER** the remaining claims (Counts I, II, V, VI, VII, XII, XIII, XVI, XVII) against BTL to the United States District Court for the District of Massachusetts (Boston, Massachusetts).

(11)     This matter is **TERMINATED**.

Rebecca Grady Jennings, District Judge
United States District Court

May 5, 2026

Cc: Counsel of record

14